UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DANIEL E. FRANCIS PROPERTIES, L.C.,       )
et al.,                                                             )
                                                                       )
              Plaintiff(s),                                       )
                                                                       )
       vs.                                                          )              Case No. 4:06CV1244 JCH
                                                                       )
NATIONAL CITY BANK,                             )
                                                                       )
              Defendant(s).                                     )

## MEMORANDUM AND ORDER

       This matter is before the Court on Defendant's Motion to Dismiss, filed September 25, 2006.

(Doc. No. 10).  Plaintiffs responded on September 29, 2006 (Doc. No. 12), and Defendant filed a

reply on October 10, 2006 (Doc. No. 13).  The matter is fully briefed and ready for disposition.

## BACKGROUND[1]

       Between 2002 and 2004, Plaintiffs Daniel E. Francis Properties, L.C., Imperial Castle Realty,

L.L.C., Presort Properties, L.L.C., Pre-Sort's Zipp Express, L.L.C., and Daniel E. Francis

("Plaintiffs"), purchased a number of properties with financing provided by Defendant's predecessor-

in-interest, Allegiant Bank.[2]  (Petition for Damages (hereinafter "Complaint" or "Compl."), ¶¶ 13,

20, 29).[3]  According to Plaintiffs, following the closing of the purchases, Plaintiffs discovered

_____

       [1] Many of the facts in the Court's background section are taken from Plaintiffs' Complaint,
to which Defendant has not filed an answer.

       [2] Allegiant Bank was merged into National City Bank of the Midwest, which in turn merged
into Defendant National City Bank.  (Joint Stipulation and Proposed Order Regarding Dismissal and
Substitution of Parties, ¶ 5).

       [3] Defendant asserts Plaintiffs signed eleven separate promissory notes, totaling more than $12
million dollars, to cover the indebtedness.  (Memorandum in Support of Defendant's Motion to
Dismiss ("Defendant's Memo in Support"), P. 2).

numerous problems with the properties, including that the rents being received were insufficient to pay the debt service on the loans provided by Allegiant Bank; that some of the properties did not have houses of any type on them; that many of the houses were in disrepair and did not meet Section 8 standards and requirements; that many of the houses were uninsured; and that local jurisdictions had levied fines and issued notices of violation on the properties. (Id., ¶ 30). Plaintiffs eventually determined the properties were not financially viable. (Id., ¶ 36).

On or around July 30, 2004, Allegiant Bank merged with and into Defendant National City Bank. (Compl., ¶ 39). At some point thereafter, Plaintiffs sold the properties at a substantial loss, and proceeds from the sale were paid to Defendant to reduce, but not eliminate, the outstanding indebtednesses. (Id., ¶ 40; see also Defendant's Memo in Support, P. 2).

On April 18, 2005, Plaintiffs and Defendant entered into a "Modification Agreement," through which the parties attempted to, "resolve a number of outstanding indebtednesses by Plaintiffs to Defendant[], and to resolve Plaintiffs' claims against Defendant[] regarding the Properties." (Compl., ¶¶ 41, 42).[4] In the Modification Agreement, Plaintiffs agreed to make final loan payments totaling $366,000 to Defendant. (Defendant's Memo in Support, PP. 2-3; see also Plaintiffs' Exh. A, P. 5). In return, Defendant agreed to release Plaintiffs' posted collateral, and to, "forbear from taking action against [Plaintiffs] with respect to their respective obligations under the Notes and the Guaranty." (Plaintiff's Exh. A, P. 5; see also Defendant's Memo in Support, P. 3).[5] Plaintiffs further agreed to, "release[] and discharge[] the Bank" from all claims, "aris[ing] out of or related to any and all acts,

---

[4] Plaintiffs attach and incorporate both the Modification Agreement and the later-entered Settlement Agreement and Release into their Complaint. (Compl., ¶¶ 42, 51). The Court thus may consider them in ruling on the instant Motion to Dismiss. See Meehan v. United Consumers Club Franchising Corp., 312 F.3d 909, 913 (8th Cir. 2002).

[5] According to Defendant, Plaintiffs still owed nearly $5 million dollars on the loans. (Defendant's Memo in Support, P. 3).

activities and transactions" between the parties, including, "any and all... claims that could have been raised in any suit, proceeding or cause of action in connection therewith." (See Plaintiffs' Exh A, PP. 8-9).

According to Defendant, after the Modification Agreement was signed, Defendant concluded that its commitment to forego all further collection efforts from Plaintiffs constituted a forgiveness of their loans. (Defendant's Memo in Support, P. 3). Defendant therefore informed Plaintiffs that it would issue Form 1099s for each of the released indebtednesses. (Compl., ¶ 45). Plaintiffs contend it was crucial to them that their loans not be "released, 'written off,' and discharged, as such a release and discharge would result in taxable income to the Plaintiffs." (Compl., ¶ 42). Plaintiffs nevertheless entered into a second agreement, entitled "Settlement Agreement and Release," on August 10, 2005. (Compl., ¶ 51; Defendant's Memo in Support, P. 3).[6] This second agreement divided Plaintiffs' final payment among their various loans, and specifically provided that, "Bank shall issue a Form 1099 to [] each respective Borrower after application of the Payment in accordance with the foregoing." (Plaintiffs' Exh. B, PP. 2-3). Plaintiffs again agreed to, "release[] and discharge[] the Bank...from all manner of actions, suits, proceedings, and causes of action...which arise out of or are related to any and all acts, activities and transactions" between the parties. (Id., PP. 3-4). The second agreement further expressly stated as follows: "Bank hereby releases [Plaintiffs] from any outstanding indebtedness under the Notes." (Id., P. 4). As further consideration for this second agreement, Defendant agreed to pay Daniel E. Francis an additional $14,000 in cash. (Id., P. 3).

In July, 2006, Plaintiffs filed this action in Missouri state court, alleging that Defendant (1) acted illegally as a real estate broker for the properties involved in the transactions underlying the

---

[6] Plaintiffs were represented by counsel throughout their negotiations of both the Modification Agreement and the Settlement Agreement and Release. (See Plaintiffs' Exh. A, P. 10; Plaintiffs' Exh. B, P. 4).

aforementioned agreements (Count I); (2) fraudulently induced Plaintiffs to participate in said property transactions by failing to disclose the physical and financial conditions of the properties at issue (Count II); (3) breached its fiduciary duty to Plaintiffs (Count III); (4) negligently misrepresented the physical and financial condition of the properties involved in the underlying transactions (Count IV); (5) negligently extended credit to Plaintiffs for the purpose of purchasing the properties (Count V); and (6) breached the terms of the Modification Agreement and Settlement Agreement and Release, by failing to "forbear" collection of the specified debts, and failing to release Plaintiffs' collateral after full performance by Plaintiffs of their contractual obligations (Count VI). (Compl., ¶¶ 59-80). Underlying each of these claims is Plaintiffs' contention that Defendant fraudulently induced Plaintiffs into signing the Modification Agreement, and that the Settlement Agreement and Release was signed by Plaintiffs under duress. (Compl., ¶¶ 51, 52). Plaintiffs thus maintain they should not be bound by their release of any and all claims arising from activities related to the original loan documents.

In its Motion to Dismiss, Defendant asserts Plaintiffs have released their entitlement to all of the above claims, as the agreements are valid and enforceable, were obtained under circumstances constituting neither fraud nor duress, and have not been breached by Defendant.

## STANDARD FOR MOTION TO DISMISS

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to Plaintiffs. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A cause of action should not be dismissed for failure to state a claim unless, from the face of the Complaint, it appears beyond a reasonable doubt that Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); Jackson Sawmill Co., Inc. v. United States, 580 F.2d 302,

306 (8th Cir. 1978), <u>cert. denied</u>, 439 U.S. 1070 (1979). Thus, a motion to dismiss is likely to be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." <u>Fusco v. Xerox Corp.</u>, 676 F.2d 332, 334 (8th Cir. 1982) (internal quotations and citation omitted).

## DISCUSSION

Plaintiffs concede that, if the Modification Agreement and/or the Settlement Agreement and Release are valid and enforceable, their claims must be dismissed. (Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss, P. 2). The Court thus must analyze Plaintiffs' claims that the agreements are void or voidable because they were obtained through fraud and duress, respectively.

## I.   Modification Agreement

Plaintiffs first assert that the Modification Agreement should be found void, because Defendant entered into the agreement never intending to fulfill its obligation to, "forbear from taking action against [Plaintiffs] with respect to their respective obligations under the notes and guarantee." (Compl., ¶ 43). Specifically, Plaintiffs allege as follows:

> 44. The execution of the Modification Agreement by the Plaintiffs was in direct reliance upon Defendant's agreement to "forebear" from releasing the outstanding indebtednesses, and Plaintiffs in executing the Modification Agreement relied on the Defendant's true intentions that [it] would forebear from taking any action against Plaintiffs on the outstanding indebtednesses. Plaintiffs would not have entered into the Modification Agreement if the indebtednesses were to be released and discharged. Rather, Plaintiffs would have pursued [their] claims against Defendant[] for damages relating to the Section 8 Properties and their consequential losses therefrom.

> 45. After execution of the Modification Agreement and Plaintiffs' satisfaction of their obligations therein, Defendant[] notified Plaintiffs that Defendant[] would not comply with terms of the Modification Agreement by forbearing from taking any action relating to the indebtednesses of Plaintiffs. Instead, Defendant[] informed Plaintiffs that [it] would release the indebtednesses of

the borrowers and guarantors, Plaintiffs, and issue Form 1099s for each of the indebtednesses released to Plaintiffs.

(Compl., ¶¶ 44, 45).

In its Motion to Dismiss, Defendant contends Plaintiffs' claim of fraud in the Modification Agreement is directly contradicted by the language of the agreement itself, and further, that by entering into the second agreement, Plaintiffs effectively waived any claim of fraud they may have had regarding the original agreement. (Defendant's Memo in Support, PP. 8-10). Because it is dispositive, the Court addresses only Defendant's second assertion.

The Eighth Circuit has held as follows:

> It is well settled that a valid fraud claim is relinquished when the victim of the fraud enters into a subsequent agreement with the perpetrator concerning the same subject matter:
>> The authorities are unanimous in holding that where one has been induced by fraud to enter into a contract and, after discovery of the fraud, enters into an agreement concerning the subject matter of the contract,... he is conclusively deemed to have waived any claim for damages on account of fraud.

Anselmo v. Manufacturers Life Ins. Co., 771 F.2d 417, 420-21 (8th Cir. 1985), quoting Philips Petroleum Co. v. Rau Construction Co., 130 F.2d 499, 502 (8th Cir.), cert. denied, 317 U.S. 685, 63 S.Ct. 260, 87 L.Ed. 549 (1942). See also Phipps v. Union Elec. Co., 25 S.W.3d 679, 682 (Mo. App. 2000) (internal quotations and citations omitted) ("If at the time the parties entered into the new agreement the facts as to the fraud and deceit were known, it is to be presumed that both parties acted with that question in view, and the new agreement was the wiping out of all old scores.").

In the instant case, it is undisputed that Plaintiffs knew of Defendant's alleged fraud in the Modification Agreement, i.e., promising therein that Defendant would not release Plaintiffs' outstanding indebtedness and issue Form 1099s, while knowing it could not and would not comply with such a promise, at the time they signed the Settlement Agreement and Release. (See Compl., ¶¶ 43-45). As stated above, Plaintiffs nevertheless entered into the Settlement Agreement and

Release.  Thus, under governing law, by entering into a second, subsequent agreement with Defendant on the same subject matter, having full knowledge of the alleged fraud, Plaintiffs waived any right they may have had to bring that claim.  See Anselmo, 771 F.2d at 421; see also Phipps, 25 S.W.3d at 682 ("By voluntarily settling her case with knowledge of the alleged fraud, plaintiff waived any potential claim for damages that she may have had.").

**II.    Settlement Agreement And Release**

Plaintiffs next claim the Settlement Agreement and Release should not be enforced against them, because it was obtained through duress.  (Compl., ¶¶ 45-51).  Under Eighth Circuit law, "[w]hether particular facts are sufficient to constitute duress is a matter of law for the court, while the question of whether the facts alleged actually exist is a matter for the fact finder."  Anselmo, 771 F.2d at 419-20 (citation omitted).  Further, "[a] party trying to invalidate a release must show that the other party's wrongful acts caused him to be bereft of the quality of mind essential to the making of a contract."  Id. at 420 (internal quotations and citation omitted).

Upon consideration, the Court finds Plaintiffs' claim of duress fails, for two reasons.  First, even viewing the facts in the light most favorable to Plaintiffs, the Court finds Plaintiffs fail to establish they entered into the Settlement Agreement and Release bereft of their free will.  Anselmo, 771 F.2d at 420.  Specifically, the Court notes that while Plaintiffs may have confronted a "difficult dilemma," the fact remains that the Settlement Agreement and Release was entered into between experienced business entities[7], both represented by legal counsel.  (See Plaintiff's Exh. B, ¶ 5(f)).  See Anselmo, 771 F.2d at 420.

---

[7] The Court finds Plaintiffs' assertion that Mr. Francis was not experienced in business belied by the fact that at the time of these transactions, he was a managing member of no less than four real estate investment companies.  (See Plaintiffs' Exh. A, P. 11; Plaintiffs' Exh. B, P. 5).

Furthermore, the Court notes that, "contracts induced by duress are voidable, not void." Anselmo, 771 F.2d at 420 (citation omitted). Thus, "[a] party, who is entitled to avoid a contract on the ground of duress should repudiate it promptly after the duress has been removed. Silence and acquiescence for a considerable period thereafter, action in accord with it, and acceptance of benefits under it, amount to a ratification." Id. (internal quotations and citations omitted); see also Schmalz v. Hardy Salt Co., 739 S.W.2d 765, 768 (Mo. App. 1987); Slone v. Purina Mills, Inc., 927 S.W.2d 358, 371 (Mo. App. 1996). In the instant case, Plaintiffs retained the additional $14,000 they received from Defendant as a result of the Settlement Agreement and Release, and further did not institute suit on the matter until nearly a year after the signing of the agreement. Under these circumstances, the Court finds Plaintiffs accepted the benefits of the agreement and acted in accordance with it, thereby waiving any duress claim they may otherwise have had. Anselmo, 771 F.2d at 420.

Accordingly, because the Court finds that Plaintiffs waived their claims of fraud with respect to the Modification Agreement, and duress with respect to the Settlement Agreement and Release, Plaintiffs are bound by the terms of those agreements. Thus, because Plaintiffs effectively released all claims against Defendant under both Paragraph 8 of the Modification Agreement and Paragraph 4 of the Settlement Agreement and Release, their claims in the instant suit must be dismissed.

## <u>CONCLUSION</u>

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. No. 10) is **GRANTED**, and Plaintiffs' claims are **DISMISSED** with prejudice.  An appropriate Order of Dismissal will accompany this Memorandum and Order.


Dated this <u>27th</u> day of November, 2006.


/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE